IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO



IRIZARRY CENTENO ANGEL
    Petitioner

V.                                   Criminal No. 98-175 (HL)

UNITED STATES OF AMERICA
    Respondent

**Irizarry Petitions This Court For a Writ of Audita Querela**

    Irizarry mindful of the Court's busy schedule, unable to lean on the understanding of Counsel, and requests for a Writ of Audita Querela to be issued. Where the judgement that was correct when rendered but is now infirm by a series of Supreme Court decisions decided after the judgement's rendition.

1

Question

If it was proper to use two state drug convictions which were not final at the time that the federal offense started, and erroneously used one offense that occurred after the conspiracy started as a prior conviction to enhance this petitioner defendant's sentence pursuant to 841 (b) (1) (A) and 851 and sentenced to mandatory life imprisonment without release?

Exhibit

**A**  Superseding Indictment

**B**  State Convictions

**C**  Sentencing Hearing

**D**  Government Closing Argument

## Jurisdiction

The Honorable Court has jurisdiction to grant relief on the instant action for the reasons set herein.

The Writ of Audita Querela permits a defendant to obtain "relief against a judgement of execution because of some defense or discharge arising subsequent to the rendition of the judgement." 11 C. Wright & A, Miller, federal practice and procedure § 2867, at 235 (1979).

The authority of federal Courts to recognize common law postconviction remedies is governed by the Supreme Court's decision in <u>United States v. Morgan</u> 346 U.S. 502, 74 S. Ct 247, 98 L. Ed 248 (1954). In <u>Morgan</u>, a defendant face an enhanced sentence under state law because of a prior federal conviction, and moved to vacate the federal conviction on Sixth Amendment grounds. The teaching of <u>Morgan</u> is that federal Courts may properly fill the interstices of the federal postconviction remedial framework through remedies available at common law.

A Writ of Audita Querela is used in combination with the All Writs Act, the relevant portion of which reads as follows:

<u>"The Supreme Court and all Courts established by Acts of Congress may issue all Writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usage and principles of the law.</u>"

28 U.S.C. § 1651 (a) (1994) (EMPHASIS ADDED)

As the plain language of the statute demonstrates, (1) the All Writs Act does not confer an independent basis of jurisdiction; it merely provides a tool Courts need in cases of jurisdiction is conferred by some other source. <u>United States v. New York Tel . Co.</u>, 434 U.S. 159, 172 (1977) (noting that Act provides authority for issusance of Orders needed to "prevent

3

the frustration of Orders it has previously issued in its exercise of ( jurisdiction otherwise obtained)."

In order for Writ of Audita Querela to issue, there "must be a legal defect in the conviction, or in the sentence which taints the conviction. Equities or gross injustice, in themselves, will not satisfy the legal objection requirement and will not provide a basis for relief." Doe v. Ins,120 f 3d 200, (9th cir.1997) (quoting United States v. Johnson,962, f 2d 579, 582 (7th cir. 1992).

## Discussion

The Honorable Judge should emply Audita Querela to vacate this conviction and sentence resulting form an erroneously enhanced penalty under 841 (b) (1) (a) and 851.

"Federal Courts may use any available remedy to **make good a wrong done**." Bell v Hood, 327 U.S. 678, 66 S. ct. 73, 90 L. Ed 939 (1946); See e.g. Dooley v. United States, 182 U.S. 222, 21 S. ct. 762, 45 L. Ed. 1074, and cases cited and discussed at pages 228, 230, of 182 U.S., at pages 764-765 of 21 S ct. ; Board of Commisioners of Jackson County v. United States, 308 U.S. 343, 349, 350, 60 S.ct. 285, 287-288, 84 L. Ed. 313.

1. <u>Gap-Filling Provision</u>

Irizarry anchors the gap-filling provision with two passages from <u>Kelso v. Henry</u>, 211 U.S. 146 (1908), which reads:

" Where a Court has jurisdiction, mere errors which have been committed in the course of the proceeding connot be corrected upon a Writ of Habeas Corpus, which may not, in this manner, usurp the function of the Writ of Error."

<u>Id</u>. 211 U.S. at 148

<u>Citing</u>

<u>Ex Parte Parks</u>, 93 U.S. 18, 23 L. Ed. 787;
<u>Ex Parte Sielbold</u>, 100 U.S. 371, 25 L. Ed. 717;
<u>Ex Parte Yarbrough</u>, 110 U.S. 651, 28 LEd. 274;
<u>Ex Parte Wilson</u>, 114 U.S. 417, 29 L.Ed. 89;
<u>Inre Delgado</u>, 140 U.S. 586, 35 L. Ed. 578;
<u>United States v. Pridgeon</u>, 153 U.S. 48;
<u>Andrew v. Swartz</u>, 156 U.S. 272, 39 L. Ed. 422;
<u>Riggens v. United States,</u> 199 U.S. 547, 50 L. Ed. 303;
<u>Felts v. Murphy</u>, 201 U.S. 123, 50 L. Ed. 689; and
<u>Valintine v. Mercer</u>, 201 U.S. 131, 50 L. Ed. 693...

" .... like all other errors of law committed in the course of the proceedings, they can only be corrected by Writ of Error."

<u>Id</u>. 211 U.S. at 149

Correspondingly, being Title 28 U.S.C. § 2255, a codification of the Common-Law Writ of Coram Nobis, ( <u>United States v Hayman</u>, 342 U.S. 205, 96 L. Ed. 232, 72 S. Ct. 263 (1952)), with the statutory distinction

5

that the action is taken in the Court of conviction rather than the Court in the District of incarceration, section 2255 would be "inadequate or ineffective"; since, the error narrowed in Shepard v United States, 544 U.S. 13 (2005), and later in James does not render the entire judgement unlawful, irregular and invalid, See e.g., United States v Addonizio, 442 U.S. 178, 60 L. Ed. 805 (1979): "'while the remedy is in this sense comprehensive, it does not encompass all claimed errors in conviction and sentencing. Habeas Corpus has long been available to attack a conviction and sentence entered by a Court without jurisdiction. See e.g. Ex Parte Williams, 3 Pet. 193, 202-203, 7 L. Ed. 650 (Marshall, C.J.). In later years, the availability of the Writ has been expanded to encompass claims of Constitutional errors as well. See Waley v. Johnston, 316 U.S. 101, 104-105, 62 S. Ct. 964, 965-966, 86 L. Ed. 1302; Brown v. Allen, 344 U.S. 443, 73 S. Ct. 397, 97 L. Ed. 469. <u>But unless the claim alleges a lack of jurisdiction or Constitutional error, the scope of collateral attack has remained far more limited.</u> Stone v. Powell, 428 U.S. 465, 477 n. 10., 96 S. Ct. 3037 n. 10., 49 L. Ed. 2d 1067. The Court has held that an error of <u>law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.</u>' Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471."

Id. 442 U.S. at 185 (emphasis added).

".... This change affected the way in which the Court's judgement and sentence would be performed but it did not affect the lawfulness of the judgement itself-then or now."
Id. 442 U.S. at 187

6

commentator and jurists since the time of Blackstone, have emphasized the need to show a post-judgement contingency supply a "matter of discharge" or "defense." 3 W. Blackstone, commentaries * 405-06. See also, Humphreys v. Legget, 50 U.S. (9 HOW) 297, 314,13 L. Ed. 145 (1850) (" He is, therefore, in the same condition as if the defense had arisen after judgement, which would entitle him to relief by Audita Querela...." (Emphasis added)

Irizarry does not suggest that an Audita Querela is a wand which may be waived over an otherwise valid criminal conviction, causing its disappearance; rather, it provides relief from the consequences of a sentence after Shepard v. United States, 544 U.S. 13 (2005), and subsequently James created the defense or discharge that arose subsequent to the entered judgement. These changes " affected the way in which the Court's judgement and sentence would be performed but it did not affect the lawfulness of the judgement itself-then or now," Addonizio, 442 U.S. at 187. It is not uncommon after a trial is ended and the time has passed to discover that a shift in the law or the impact of a decision has given increased relevance to a point made at trial and pursued on appeal.

**Argument**

The government filed a timely notice of enhancement based on two state drug offenses that occurred in Ponce, Puerto Rico on **September 4, 1992 and July 23, 1993.** The District Court ruled that these convictions could be used to enhance Irizarry's sentence.

Irizarry objected to the government's use of those conviction to enhance his sentence. **The District Court denied Irizarry's objection, and sentenced his to a mandatory life imprisonment without release pursuant** to 841 (b) (1) (a) and 851.

7

There is not dispute that the alleged crime and subsequent convictions occurred within the time frame that the government charge as the parameter of the instant conspiracy charge, that is from 1993 through 1997.  **See: Exhibit A**

Irizarry argued to the District Court that he is not challenging the existence of those convictions, he is debating whether their use to enhance his sentence is proper.  Irizarry is not attacking the legal authority that permits a judge to find the fact of a prior conviction.

His allegation is, **that those convictions were not prior convictions to enhance his sentence and the government did use erroneously the offense that occurred in July 23, 1993 (after the federal conspiracy started in 1993 as a prior conviction, Irizarry was sentenced to life imprisonment by this offense.)**

Irizarry argued at his sentencing that those state convictions and the fedral offense are related.

The District Court denied his objection, deciding " **those two cases are not related to the conspiracy. They were before the conspiracy started."**  See: Exhibit C page:nine, line thirteen.

The defendant was charge with possession with intent to distribute heroin on September 4, 1992 ( **that offense was not final at the time that the federal conspiracy started**) and in July 23, 1993 (**after the federal conspiracy started**) he was charged with possession of heroin.(**these conviction arose directly from the federal offense.**)
See:Exhibit B

There is no difference between drug possession or possession with intent to distribute;

Rule 851 **is in reference to the final conviction**

### Applicable Term

4A1.2 (e) **is refering to the final convictions that occurred during the fifteen years before the beginning of the federal offense; the beginning of the offense included all related acts. 1B1.3**

In Irizzary's case, **the federal offense and the state convictions are not separated from each other by a served sentence.**

4A1.2 (a) Definition of prior conviction

(1) **The expression "prior conviction" means that the sentence that has been previously imposed after the adjudication of guilt, whether guilty plea, by trial or by declaration of nòlo contendere, by acts that have not been part of the actual offense.**

### Notes about the Application

(1) Prior conviction means a sanction imposed previous to the sentence by the actual offense and besides a sentence by acts that are part of the actual offense.

A sentence imposed after the beginning of the actual offense, but before the sentence of the actual offense is a prior conviction if it were by acts other than acts that are part of the actual offense. Conduct that is part of the actual offense means that it is relevant conduct to the actual offense. 1B1.3

1B1.3  Relevant Conduct

The subdivision (a)(1) and (a)(2) of the rules about relevant conduct are the most crucial part of the system of relevant conduct, and in reality constitutes the heart of the system. For all cases that correspond with subdivision (a)(1) of the rule of relevant conduct, are ones which identify the following as relevant conduct.

All actions and omissions commited or helped and instigated by the defendant or by which the defedant otherwise would be responsible, that ocurred during the commission of the offense by which there was a sentence, in preparation to that crime or in the course of trying to avoid detection or responsibility by that crime, or otherwise were to promote that crime.

(a) "Ardid or Common Plan"

For two or more crimes to constitute being part of ardid or common plan they have to be substatially related to each other, at least by means of a common factor. " common victim, common purpose, common accomplices, or a similar modus operandi."

(B) The same course of conduct

The appropriate factor for the determination if the crimes are sufficiently linked or related include, "The grade of similarity, the interval of time between them and the nature of the crime can be considered relevant conduct."

Irizarry claims that those state convictions were part of the federal conspiracy, and show some common factor between the federal offense and the state convictions. ( The intent to distribute heroin; the possession of heroin; the substance, the purpose and the similar modus operandi.) (heroin drug point)

The government in trial "did show and prove" beyond a reasonable doubt, that the defendant "was the distributor and was the owner of the heroin drug point in Pampanos at two different occasions, at the beginning of 1992 to 1993 and from the beginning of 1997 up to October 17, 1997. See: Exhibit D Page 154 Line 21 to Page 155.

At the time that the defendant was the owner of the Pampanos heroin drug point from 1992 to 1993 his house was raided by agents pursuant to Court Order and warrant. And upon searching his house they found heroin. (September 4, 1992, state charge 401 possession with intent to distribute)

After the conspiracy started in 1993, again his house was raided by agents, who searched and found heroin on July 23, 1993, state charge 404 possession of heroin. Irizarry pleaded guilty to both state charges on August 3, 1994 and was sentenced on August 26, 1994 after the conspiracy began.

The defendant's conduct in the federal charge compared with the conduct and behavior of the criminal charges of the state convictions, need to be examined to decide if it is in accordance with subdivision (a) (2).
Taking into consideration all of these common factors would indicate that the state convctions are part of the federal offense 1B1.3 (relevant conduct)

The government did cite the Hughes case (6th cir. 1991) to deny his objection. See: Exhibit C

The sixth circuit relied on Hughes to demonstrate that the petitoner could be convicted at the state level of an "episode" arising out of an existing and continuing conspiracy and that conviction could then be used to enhace his sentence. Contray to the fact that the charge and conviction from July 23, 1993 arose after the conspiracy began and arose directly from the conspiracy that started in 1993.

The Sixth Circuit has characterized the issue of whether or not a defendant's prior convictions ought to be found to be separate or consolidated for sentencing purposes pursuant to § 841 (b)(1)(A) as a finding of fact. United States v. Hughes, 924 F. 2d 1354, 1362 (6th cir. 1991) (citing United States v. Blackwood, 913 F. 2d 139 (4th Cir. 1990) See also United States v. McAdams, 25 F. 3d 370, 372 (6th Cir 1994); United States v. Veteto, 920 F. 2d 823, 825 (11th Cir 1991) (citing United States v. Jones, 899, F. 2d 1097, 1101 (11th Cir.) Cert. denied, 498 U.S. 906(1990)(whether previously committed crimes were a part of a common scheme is a highly fact intensive question)); United States v. Rice, 43 F. 3d 601, 606 (11th Cir. 1995) ; United States v. Emberton, 47 Fed Appx. 292, 294, 2002 U.S. App Lexis 19187 (6th Cir 2002) (the District Court's factual determination of whether prior offenses are related by virtue of being part of a single common scheme or plan is reviewed for clear error)) Clearly, the wight of case law establishes this determination as a factual determination, not a legal one. For sentencing puposes, they should be treated as only overt acts because they were part of a "single common scheme." U.S.S.G. § 4A1.2 Cmt. n.3; United States v. Beddow, 957 F 2d 1330, 1337 (6th Cir 1992) The conduct is not severable because it arises out of the same genus, Beddow, at 1339.

    Further, a prior state drug conviction can be used to enhance a conspiracy conbiction only if the prior felony conviction was final at the time of the second offense,"arose from a seperate criminal episode" Which might have been related but was a "punctuated occurrence with a limited duration " United States v. Hughes, 924 F. 2d 1354, 1361-62 (6th Cir 1991). The test set forth in Hughes cannot be met because the prior convictions are, technically, not prior convictions at all. Chronologically, they arise after the conspiracy began. Further, they

12

arise directly from the conspiracy, so they are not punctuated occurrences, the underlying activities are simply episodes plucked from the larger whole of the conspiracy and are inseperable from it. They are inextricably linked to the crime charged in federal Court. **They are sub-parts of on greater event.**

According to the evidence portrayed in Court and the defendant as stated in Court from one of those witnesses, that the defendant was **the owner of the heroin drug point in Pampanos from 1992 to 1993.**

The conspiracy took place in Ponce Pampanos drug point from 1993 up to October 17, 1997.

The conspiracy began **before** Irizarry was incarcerated (in the state) and continued during his incarceration and continued onward after he was released.

The government did prove beyond a reasonable doubt that Irizarry had control of the heroin drug point in Pampanos from 1992 to 1997.

We can only conclude that the heroin in both state convictions were part of the heroin which was being sold in the Pampanos drug point, of which the witness in Court stated he was the owner.

## conclusion

Irizarry did show that those state convictions were part of an exsisting and continuing conspiracy. "because one of those convictions was not final at the time that the conspiracy began," and the other conviction arose directly from the conspiracy; and most important "both state crimes were to promote the federal offense." 4A1.2 (a) (1) and 1B1.3 (a) (1)

The government did use erroneously thosse conviction **as prior convictions** and by the use of the conviction that arose directly of the conspiracy the Court enhanced his sentence to life imprisonment without release.

Irizarry prays that the Honorable Court set aside his conviction and sentence, and remand this matter for resentencing.

Date: 9-4-08
Pro-Se

### Certificate of Service

I, Irizarry Centeno Hereby Certify that a copy and request for Audita Querela was sent to:

United States Attorney
Room 452, Federal Office Building
Carlos Chardon Street
Hato Rey, Puerto Rico 00918

Under 28 U.S.C. § 1746 this 4 day of September 2008.

Signature: Angel Irizarry Centeno
Irizarry Centeno Angel
17035-069
U.S.P. Terre Haute
P.O. Box 33
Terre Haute, IN
47808